UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

_____

SECURITIES AND EXCHANGE COMMISSION

                      Plaintiff,              Case No. :09-CV-506

vs.

WEALTH MANAGEMENT, LLC;
JAMES PUTMAN, and SIMONE FEVOLA

                      Defendants, and

WML GRYPHON FUND, LLC; WML
WATCH STONE PARTNERS, L.P.; WML PANTERA
PARTNERS, L.P WML PALISADE PARTNERS, L.P.;
WML L3, LLC; and WML QUETZAL PARTNERS, L.P.

                      Relief Defendants.

_____

**OBJECTION TO THE RECEIVER'S PROPOSED PLAN FOR ALLOCATING
WEALTH MANAGEMENT LLC'S AND THE WEALTH MANAGEMENT LLC
FUNDS' ASSETS BY DONALD J. MCDONALD, SYLVIA E.MCDONALD,
THE ANETHESIA SERVICES OF FOX VALLEY PROFIT SHARING PLAN, PAUL
O'CONNOR AND PAMELA O'CONNOR**

_____

        Donald J. McDonald, Sylvia E. McDonald and Anesthesia Services of Fox Valley Profit Sharing Plan (collectively the "McDonalds") and Paul and Pamela O'Connor (collectively the "O'Connors" and together with the McDonalds the "Objecting Investors") object to the Receiver's proposed plan for allocating the Assets of Wealth Management, LLC ("WM"), WML Gryphon Fund LLC ("Gryphon"), WML Watch Stone Partners, L.P. ("Watch Stone"), WML Pantera Partners, L.P. ("Pantera"), WML Palisade Partners, L.P. ("Palisade"), WML L3, LLC ("L3"), and WML Quetzal Partners, L.P. ("Quetzal"; Gryphon, Watch Stone, Pantera, Palisade,

L3, and Quetzal are the "WM Funds"). The grounds for the Objecting Investors' objections to the Proposed Allocation Plan are: (1) retired investors' distributions should not be offset by post May 31, 2008 redemptions or subject to the Receiver's "claw-back" option if a retiree regularly withdrew invested funds as his/her primary income source, and (2) WM is not entitled to distributions as an investor in any or all of the WM Funds.

## I. IDENTIFICATION OF OBJECTING INVESTORS

The McDonalds (1283 Bayshore Drive, Oshkosh, Wisconsin, 54901) invested in the Watch Stone, Palisade, and Gryphon funds with investments totaling $827,728.29 as of July 5, 2009 (identical to the market values reported on their April 14, 2009 statements).

The O'Connors (3754 Leonard Point Road, Oshkosh, Wisconsin, 54904) invested in the Watch Stone and Palisade funds with investments totaling $2,322,070.13 as of March 11, 2009. The O'Connors are retired. Therefore, after investing for retirement since 1971, and with WM since at least 2000, the O'Connors began drawing on their retirement funds in 2003 and continue to routinely request redemptions as their sole source of income.

## II. THE OBJECTING INVESTORS' OBJECTIONS TO THE PROPOSED ALLOCATION PLAN

### A. Regular and Frequent Redemptions Retired Investors Withdrew From Their Retirement Savings Should Not be Subject to Offset From the Investors' Distributions.

The Receiver proposes to deduct redemptions paid after May 31, 2008 from investors' total distributions because some investors learned of James Putman's and Simone Fevola's improper activities in June, 2008 and this knowledge likely motivated their redemption demands. (Proposed Allocation Plan at 30-31). The Receiver's admittedly over-inclusive and bright-line rule only makes sense for investors who never or rarely made redemption requests until after May 31, 2008.

The Receiver's proposal for handling redemptions relates to the investors' motivations for requesting them (Putman's disclosure, in June, 2008, that he and Fevola had received kickbacks). Retired investors, who drew on their WM Funds investments as their primary income source, were not prompted to request redemptions because of Putman's disclosure. Quite the opposite, they invested in WM Funds to ultimately fund retirement. Now in retirement they depend on those investments for income. To ascribe an ulterior motive to people because, at an inopportune time, they met their investment goal, retired from a productive career, and are now living on those investments is unreasonable and inequitable. Distributions in receivership cases must be equitable and fair to garner a reasonable judge's approval. SEC v. Enterprise Trust Co., No. 08 C 1260, 2008 WL 4534154 at *3 (N.D. Ill. Oct. 7, 2008), *aff'd 559 F. 3d 649 (7th Cir. 2009)*.

Modifying the Proposed Allocation Plan (specifically 2.(b)(i) and (ii)) to provide a narrow exception: retired investors' distributions will not be affected (i.e. no deductions) if they requested regular (at least once every two months) redemptions before Putman's June, 2008 disclosure[1]. Applying this exception is feasible and not burdensome for the Receiver. The Receiver has analyzed WM's and the WM Funds' records and is satisfied with their accuracy. (Proposed Allocation Plan at 33). Therefore, dates of redemption requests and payments should be available with additional documentation to be provided by investors as part of the proof of claim procedures (*See* Proposed Allocation Plan at 23, note 4).

Distribution deductions should *not* be applied to retired investors who redeemed investments to fund retirement because their actions demonstrate that Putman's disclosure did

---

[1] Unpaid redemption requests would be treated as outlined in the Proposed Allocation Plan (page 26).

not prompt their redemption requests.[2] This modification to the Proposed Allocation Plan establishes a more accurate bright line test. Moreover, the process for implementing this rule is straightforward.

### B. Wealth Management, LLC Should Only Receive Distributions *After* All WM Funds Investors Have Been Paid in Full.

The Receiver proposes to honor WM's investments in the WM Funds and to distribute to WM its pro rata share of the limited available assets. (Receiver's Proposed Allocation Plan at 7 and note 5). The SEC alleged and the Receiver confirmed that investments in WM Funds were drastically overstated and accepted from the Sub-Funds without any independent verification. (Id. at 3, 9, 10). Using these inflated valuations, investors were charged a .25% annual management fee (ultimately becoming a liquidation fee) payable quarterly and in advance. (Id. at 6). Therefore, investors were significantly over paying WM, considering the actual value of their WM Funds investments. (Id. at 9).

Now the Receiver proposes lining up WM for distributions with the investors because WM apparently used the inflated management fees investors paid to purchase shares in the WM Funds. Having overstated the WM Funds' values and overcharged investors, it is blatantly unfair for WM to share equally in distributions with WM Funds investors.[3] If WM demonstrates cash investments in the WM Funds, it should only recover on its investments *after* all investors have been repaid in full.

---

[2] The Receiver Proposed Allocation Plan states that she does *not* intend to demand cash recoveries from those who received redemption payments after May 31, 2008. If the Receiver's plans change, the McDonalds and the O'Connors reserve their rights to object, challenge the Receiver's claimed "claw back" authority, and assert defenses. (*See* Proposed Allocation Plan at 32).

[3] The inequities are magnified since presumably WM did not charge itself an inherently inflated management or liquidation fee.

### III. CONCLUSION

WM Funds investors depended on WM to properly manage their investments, and paid WM for this service. Not only will these investors likely only recover a portion of their investments, but the Receiver's Proposed Allocation Plan intensifies the injustice by penalizing retirees for relying on their retirement investments and by categorizing WM as an investor for distribution purposes. As a result, the related provisions of the Proposed Allocation Plan are inequitable and unfair and may not be approved. SEC v. Enterprise Trust Co., No. 08 C 1260, 2008 WL 4534154 at *3 (N.D. Ill. Oct. 7, 2008), *aff'd 559 F. 3d 649 (7th Cir. 2009).*

Dated: September 30, 2009                MELNICK & MELNICK, S.C.

/s/ David A. Melnick

Attorneys for Investors, Dr. Donald J. McDonald, Sylvia E. McDonald, Anesthesia Services of Fox Valley Profit Sharing Plan, Dr. Paul C. O'Connor and Pamela M. O'Connor

MELNICK & MELNICK, S.C.
330 East Kilbourn Avenue, Suite 1185
Milwaukee, WI 53202
Phone: (414) 226-4460
Fax:    (414) -226-4468
E-mail: davidmelnick@ameritech.net