UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

        Plaintiff,

  v.                                    Case No. 09-C-506

WEALTH MANAGEMENT LLC, JAMES PUTMAN,
SIMONE FEVOLA, et al.,

        Defendants.

**ORDER GRANTING MOTION TO CLARIFY
ASSET FREEZE ORDER**

This matter comes before me on three motions for clarification or modification of the Court's Order Freezing Assets, entered May 20, 2009 [Doc. # 9] which was extended by the Court's Order entered May 26, 2009 [Doc. # 15]. The movants all claim to have made loans to the Brown Investment Fund LP (the "Brown Fund"), a Delaware limited partnership in which two of the relief defendants, WML Watch Stone Partners, LP ("Watch Stone") and WML Palisade Partners, LP ("Palisade"), invested. Dr. David Janssen, Dr. Janssen's retirement fund, the JoAnne Miller Trust, and Riek & Associates, LLC, all take issue with the Receiver's contention that the order freezing assets embraces the assets of the Brown Fund so as to prevent the fund from paying them amounts due them under promissory notes issued by the Fund. The movants seek relief in the form of an order indicating that the assets of the Brown Fund are not within the scope of the freeze order so that the Brown Fund can pay them on the notes they hold.

Wood Hat & Silver LLC ("Wood"), a Delaware limited liability company, is the general partner of the Brown Fund. The managing member of Wood is Joseph Aaron. The Brown Fund was established as a means to invest in the secondary market for life insurance policies on the elderly. In order to do so, the Brown Fund sought out elderly individuals willing to purchase life insurance policy with money the fund loaned them and then assign the policy to fund. Once the two year period of contestability of the policy lapsed, the Brown Fund would attempt to sell the policies to other investors. The Brown Fund apparently had difficulty pitching these policies after a time, which was problematic given the fact that the Fund had to either pay the premium associated with insuring the life of the aged insured or simply let the policy lapse and lose its investment. Because life insurance policy premiums on people ranging in age from 73 to 85 are not cheap, the Brown Fund was faced with a cash flow problem and had to look elsewhere for financing.

In order to obtain the cash needed to pay the premiums so the policies would not lapse, the Brown Fund offered to give promissory notes with attractive interest rates in return for loans. Tom Riek, an erstwhile employee of both Wood and Wealth Management,[1] was helping a recently-widowed JoAnne Miller manage her finances and recommended that she consider loaning $300,000 to the Brown Fund. In order to assuage her concern about the investment, Riek's firm also loaned the fund $300,000. On September 1, 2007, the Brown Fund made promissory notes to both Miller's trust and Riek's firm, with both notes paying 12% interest per annum and maturing on September 1, 2009. (Doc. # 233, Exs. J, L.) On June 1, 2008, the Brown Fund also gave Dr. Janssen a

---

[1] Riek was last employed by Wealth Management in 1995, well before the events the SEC alleges occurred giving rise to this action.

promissory note paying 12% interest per annum for the $125,000 Dr. Janssen had loaned the Brown Fund. (Doc. # 233, Ex. M.) The same day the Brown Fund also made a promissory note in the amount of $58,000 to Dr. Janssen's retirement fund.

Aaron met defendants James Putman and Simone Fevola through Riek, and between 2002 and 2005 Aaron gave a number of investment presentations to Putman and Fevola. Putman and Fevola took to the idea of investing in the Brown Fund, and by 2005 the Wealth Management funds were the principal investor in the Brown Fund. According to Aaron, it was around this time that Wood gave the Wealth Management funds authority to approve all investments made by the Brown Fund. Although Wood may have allowed the Wealth Management funds to provide input commensurate with their interest in the Brown Fund, there is nothing to suggest that Watch Stone and Palisade were ever anything but limited partners of the fund, with Wood remaining its general partner and Aaron the managing partner of Wood.

The Receiver points out that Watch Stone and Palisade invested a combined total of $16.2 million in the Brown Fund, which accounts for 95.27% of the investments in the fund. As of January 31, 2010, the Brown Fund had assets that totaled only $1,529,546.60, less than ten percent of the amount the Wealth Management funds had invested in it. Miller, Dr. Janssen and Riek & Associates have demanded payment on their notes, but Wood has refused to pay based on the Receiver's contention that the Brown Fund's assets are within the scope of the order.[2] On April 13, 2010, the Receiver filed a complaint against various defendants, including Wood, Aaron, the Brown

---

[2] Based on a letter from Wood's counsel to the Receiver, Wood appears eager to have the Brown Fund repay the notes. (Doc. # 186 Ex. G.)

Fund, Miller's trust, Janssen, and Riek & Associates, LLC.[3] *Feinstein v. Wood, Hat & Silver, LLC*, Case No. 10-C-312 (E.D. Wis.). In this new action, the Receiver seeks declaratory judgment in the form of a re-characterization of the notes as securities, or alternatively, equitable subordination of the interests of the note holders to the investments of Watch Stone and Palisade in the Brown Fund.

The issue before me is whether the freeze order prohibits distribution of the Brown Fund's assets to Miller's trust, Dr. Janssen and his retirement fund, and Riek & Associates, LLC. The order extending the asset freeze applies to the property of "Defendant WM or Relief Defendants the WM Funds currently held by them or under their control, whether held in any of their names or for any of their direct or indirect beneficial interest wherever situated, and directing each of the financial or brokerage institutions, debtors, and bailees, or any other person or entity holding such assets, funds, or other properties of Defendant WM or Relief Defendants the WM Funds, to hold or retain within its control and prohibit the withdrawal, removal, transfer, or other disposal of any such assets, funds, or other properties . . . ." (Doc. # 15 at 3.) The assets of the Brown Fund, however, are not held by Watch Stone or Palisade. The fact that Wood allowed these two relief defendants with a 95% interest in the Brown Fund to guide its operation does not mean that the assets of the Fund are under their legal control. Wood remains the general partner. The order further states: "The Receiver shall have authority to direct the disbursement of funds and other assets. Financial institutions and other custodians of assets otherwise subject to this Order shall honor any requests by the Receiver for the disbursement of such assets." (*Id.*) Because the Brown Fund is not a

---

[3]The defendants named in the complaint are Wood, Hat & Silver, LLC, Wood Hat & Silver 401(k) Profit Sharing Plan & Trust, Joseph Aaron, The Brown Investment Fund, LP, JoAnne Miller Trust, Riek & Associates, LLC, David Janssen, MD, and Fox Valley Plastic Surgery 401(k) Plan.

4

"custodian" of assets to which the freeze order applies, however, the freeze order itself does not affect the Brown Fund's assets or restrain the Brown Fund from engaging in business as usual, which includes paying its creditors. As Miller suggests, to adopt the Receiver's position would mean that the Brown Fund would not even be permitted to pay its phone bill.

The asset belonging to Watch Stone and Palisade that the Receiver is seeking to preserve for the benefit of the investors in the relief defendants is a 95.27% interest in the Brown Fund, which is different from the cash in the Brown Fund's account. Both Watch Stone and Palisade are limited partners of the Brown Fund, which means that they hold a legal interest in the Brown Fund itself but do not have any property interest in the partnership's assets. *See Smith v. Bader*, 458 F. Supp. 1184, 1187 (S.D.N.Y. 1978) (observing that under California law ". . . the limited partner has no property interest in the assets of the partnership, but only a right to share in the profits.") (citation omitted); *see also City of Wilmington v. Bassett Partners, L.P.*, No. 99C-09-140 WCC, 2000 WL 1211513, at *3 (Del. Super. Ct. June 30, 2000) ("Regardless of the type of property (real, personal or mixed) that a limited partnership owns, the general partners and limited partners of the partnership have no interest in specific partnership property.") (citation omitted). While the Receiver stands in the shoes of the two relief defendants in their role as limited partners of the Brown Fund, she has no greater rights than they did. The rights they had were to enjoy the profits of the Brown Funds, and not the property of the partnership itself. The Receiver therefore does not own anything more than what Watch Stone and Palisade owned: limited partnership interests in the Brown Fund.

As the assets of the Brown Fund are not property in which the Receiver has any property interest, they are not covered by the freeze order. Given this fact, the Receiver's contention that the

5

note holders who have demanded payment from the Brown Fund are really investors holding securities is neither here nor there, as Dr. Janssen observes. (Doc. # 242 at 3.) Even if they are "securities," this does not extinguish whatever contractual rights they may have against the Brown Fund by virtue of the instruments. And while the Receiver believes the notes to be illegally-issued securities, it was Miller, Dr. Janssen and Riek & Associates who purchased the alleged unregistered securities from the Brown Fund, not the Receiver. The Receiver has given the Court no authority to suggest that she, as a third party to these transactions, has a right to pursue civil remedies for violations of the securities laws. Additionally, under the Brown Fund's partnership agreement, upon dissolution a liability to one who is not a limited partner is to be paid before the limited partners are paid. (Doc. # 233 Ex. A at 21.) Just because Watch Stone and Palisade poured nearly all of the money into the Brown Fund, most of which is now gone, it does not follow that the Brown Fund, through its general partner Wood, is prevented from living up to its contractual obligations.

Because I conclude that the freeze order does not cover the Brown Fund, the Brown Fund is free to use its resources to pay its creditors, whether they be the phone company or those from whom the fund borrowed money. As the Receiver fears, the effect of this ruling will likely be that Brown will use the remainder of its assets to pay back the loans, which means the investors in Watch Stone and Palisade will be left with a 95% interest in a limited partnership with little or no assets.

This leaves the matter of the Receiver's recent filing of the action for declaratory judgment in which she seeks to either have the notes made by the Brown Fund re-characterized as securities, or alternatively, have the rights of the note holders equitably subordinated to the rights of the investors in Watch Stone and Palisade, as these two funds contributed over $16 million to the

6

Brown Fund. If the Court were to re-characterize the interests of the note holders as a security, by which the Receiver presumably means an equity interest, such an interest would still be an interest in the Brown Fund, meaning the note holders would effectively become limited partners like Watch Stone and Palisade. This would have the effect of converting the purportedly secured debt into a very small (and nearly worthless) interest in the limited partnership.

Equitable subordination is rarely applied outside of bankruptcy proceedings, but there is authority to suggest it available as an equitable remedy in actions brought by the Commission to enforce the securities laws. *See SEC v. American Bd. of Trade*, 719 F. Supp. 186, 195-96 (S.D.N.Y. 1989) (". . . the Court has the equitable power to subordinate one claim to another 'if it finds that the creditor's claim, while not lacking a lawful basis nonetheless results from inequitable behavior on the part of that creditor.'") (quotation omitted). Given the facts uncovered in discovery relating to these motions, the Receiver's claim of equitable subordination appears attenuated. Entertaining a claim of equitable subordination requires an examination of the particular equities of a given case. *Matter of Virtual Network Services Corp.*, 902 F.2d 1246, 1250 (7th Cir. 1990). There is nothing before me to suggest that the individuals who extended credit to the Brown Fund have engaged in misconduct. They are not corporate insiders with equity interests who attempted to leapfrog other shareholders or members in an effort to gain the status of a secured creditor. As the Seventh Circuit has explained,

> Equitable subordination typically involves closely-held corporations and their insiders. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1356 (7th Cir. 1990) ("Equitable subordination usually is a response to efforts by corporate insiders to convert their equity interests into secured debt in anticipation of bankruptcy."). This is so because elsewhere the suspicion does not easily arise that a claim is anything else but what it purports to be.

7

*Matter of Lifschultz Fast Freight*, 132 F.3d 339, 343-44 (7th Cir. 1997). If anything, as Miller argues, the equities are against the Receiver under these facts given the allegations that Watch Stone and Palisade (through Putman and Fevola) were privy to the alleged violations of the securities laws by the Brown Fund and Wood. But I need not resolve the merits of the Receiver's equitable subordination claim now, as it is not before me on the motions to clarify or modify the freeze order.

**THEREFORE, IT IS ORDERED** that the motions to clarify the freeze order [Docket Nos. 182, 184, 187] are granted. The assets of the Brown Fund are not subject to the Court's freeze order, so nothing in the freeze order prevents Wood from paying the Brown Fund's creditors using the assets in the Brown Fund.

**IT IS FURTHER ORDERED** that the Receiver's motion for leave instanter to file a sur-reply brief in opposition to the motions [Doc. # 245] is **GRANTED**.

Dated this    30th    day of April, 2010.

                                                    s/ William C. Griesbach
                                                    William C. Griesbach
                                                    United States District Judge