UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.                                   Case No: 09-C-506

WEALTH MANAGEMENT, LLC,
JAMES PUTMAN, and SIMONE FEVOLA,

    Defendants, and

WML GRYPHON FUND, LLC; WML WATCH STONE
PARTNERS, L.P.; WML PANTERA PARTNERS, L.P.; WML
PALISADE PARTNERS, L.P.; WML L3, LLC; WML
QUETZAL PARTNERS, L.P., and EMPLOYEE SERVICES
OF APPLETON, INC.,

    Relief Defendants.

## DECISION AND ORDER

The Securities and Exchange Commission has filed a motion for summary judgment against Defendant James Putman, the founder and chairman of Wealth Management, LLC, an investment company based in Appleton, Wisconsin. Putman appears *pro se* in this action, and so the SEC's motion properly included information about the Civil Local Rules and, in particular, the requirement that parties submit proposed findings of fact. The SEC has submitted extensive proposed findings of fact detailing the history of Wealth Management and the securities violations that Putman eventually engaged in. Civil Local Rule 56(b)(4) states that "The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment." Putman has not provided any proposed findings of his own, nor has he responded to the government's proposed findings. Accordingly, those findings are adopted as true.

In brief, sometime around 2003 Putman decided to transform his company's investment model from a traditional one focusing on stocks and bonds to one involving more exotic investments. These included investing in funds that made loans to real estate developers in the southwestern United States. Other funds invested in life insurance premium financing of policies for elderly people. There was nothing inherently improper about such investments (apart from the unusual notion of betting against people's lives). The problem for Putman and his investors was that the investors were typically retirees looking for predictable and safe returns, and investment in speculative real estate and life insurance was anything but. Another problem was that Putman became involved in a fee-sharing arrangement (the government calls it a kick-back scheme) whereby he would receive a portion of the sales commissions generated by sales of life insurance policies. Such a commission would need to be disclosed to investors because (among other reasons) it was at odds with Wealth Management's fee-only investment model. (The purpose of a fee-only investment model is to remove any financial incentive a manager might have to sell particular products to an investor.) These commission sharing arrangements resulted in over $1 million paid to Putman in 2006 and 2007. Putman did not disclose this arrangement until 2008, at which point the Wealth Management Board of Managers removed him. In 2009, after the funds had essentially collapsed, the SEC stepped in and this Court appointed a receiver. The SEC's proposed of findings of fact are hereby adopted in their entirety and incorporated herein.

**I. Section 206 of the Advisers Act**

The SEC argues that Putman violated §§ 206(1), (2), (4), and of the Advisers Act as well as Rule (4)-8. 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4). *See, e.g., SEC v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180 (1963) (investment adviser's failure to disclose material

2

information constitutes "fraud or deceit" under the Investment Advisers Act). The relevant statutory provisions read as follows:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
>
> ...
>
> (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b-6(4).

Here it undeniable that Putman was an investment adviser. It is also undisputed that he falsely informed his investors that his was a fee-only operation when in fact he was receiving a share of the commissions generated by sales spawned by investments in life insurance policies. This constitutes a deceptive practice. Further, Putman misrepresented the suitability of his funds' investments for retirees seeking wealth preservation, telling investors that the investments would be comparable to diversified bond funds, when in fact they were highly speculative and wholly inappropriate for such investors. The undisputed proposed findings also indicate that Putman acted with *scienter*, that is, with knowledge that he was acting improperly. Putman was President of the National Association of Fee-Only Financial Planners, and thus knew about the inherent conflict of interest in accepting commissions, as well as the importance of representing (falsely) that his firm was "fee only." Moreover, there can be no dispute that investing the money of conservative

3

investors in highly speculative (and novel) investments was a practice that any investment advisor would know to be inappropriate. Accordingly, I find that the SEC is entitled to summary judgment on the Advisers Act claims.

**II. Securities Act and Exchange Act**

The SEC also argues that Putman violated Section 17(a) of the Securities Act and § 10(b) of the Exchange Act (as well as Rule 10b-5). Section 17(a) provides as follows:

> It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

Similarly, Section 10(b) makes it illegal "to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 77j(b).

For the reasons noted above, Putman's activities were deceptive. They were made in connection with the sale of securities. Accordingly, his conduct also violates Sections 17(a) and 10(b) of the Exchange Act.

4

**III. Aiding and Abetting**

The SEC further argues that Putman is liable not only for his own conduct but for aiding and abetting Wealth Management's violations of the Exchange Act and Advisers Act. As noted above and in the undisputed proposed findings, Putman was the ringleader of his company's fraudulent activities. He was thus aware that his conduct was illegal, and he was instrumental in Wealth Management's violation of the Exchange Act and Advisers Act. Moreover, he was aware of the applicable disclosure requirements and knew that failing to disclose his fee arrangement and the inappropriateness of the investments was improper. Accordingly, Putman is also liable for aiding and abetting. *Monetta Financial Services, Inc. v. S.E.C.,* 390 F.3d 952, 956 (7th Cir. 2004) ("The SEC will find one liable for aiding and abetting where: (1) there is a primary violation; (2) the aider and abettor generally was aware or knew that his or her actions were part of an overall course of conduct that was improper or illegal; and (3) the aider and abettor substantially assisted the primary violation.") (citation omitted).

**IV. Remedy**

The SEC asks for a permanent injunction and disgorgement, as well as a civil penalty. Injunctive relief is proper when the harm caused by the defendant is grave and when there is a possibility that such harm might recur in the future. *S.E.C. v. Kimmes,* 799 F. Supp. 852, 860 (N.D. Ill. 1992). Other factors include *scienter* and the defendant's recognition of his own culpability. *Id.* Here, as the SEC notes, Putman has expressed regret for what occurred but largely blames the problem on others and his own "lack of involvement" after ceding control of the company to Simone Fevola. (Dkt. # 385.) This and the other factors noted above support entry of an injunction barring Putman from further securities violations.

5

The SEC is also entitled to disgorgement. "It is well settled that the amount of disgorgement, as an equitable remedy, is determined by the amount of profit realized by the defendant." *S.E.C. v. AbsoluteFuture.com,* 393 F.3d 94, 96 (2d Cir. 2004). Here, it is undisputed that Putman received $1.24 million in improper commissions from the sale of life insurance policies. In addition, prejudgment interest on that amount would equal more than $290,000. *Id.* at 97.

Finally, there is the question of the civil penalty. Here, the government has convincingly demonstrated that Putman is eligible for a stiff "third tier" civil penalty equaling the amount of his pecuniary gain, which is more than $1.5 million including interest. But given his financial state and bankruptcy, the government suggests that a penalty of $130,000 (the regulatory penalty) would suffice. *S.E.C. v. Souza,* 2011 WL 2181365 at *3 (E.D. Cal., June 3, 2011). I agree that there is little reason to impose the maximum penalty possible and that $130,000 is sufficient.

**V. Conclusion**

The government's motion for summary judgment, which was essentially unopposed, is hereby **GRANTED**. The SEC is entitled to judgment on all claims against Defendant Putman. Putman is further **ENJOINED** from committing future violations of the antifraud provisions of the Advisers Act, Securities Act, and Exchange Act. Putman is further ordered to pay $1,530,129 to the SEC as disgorgement of ill-gotten gains and interest. He is further ordered to pay $130,000 as a civil penalty.

**SO ORDERED** this   24th   day of July, 2010.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge